*268 OPINION OF THE COURT
Jack Turret, J.
Plaintiffs application in this medical malpractice case at the court’s behest seeks release of the "newborn birth records of Joseph Paul Coleman”, a child adopted at birth. The child’s records sought are those of Brookhaven Hospital where he was born on August 16, 1978.
In their responsive papers, defendants argue that beyond their entitlement to the infant’s "birth records” they are entitled to the records of the natural mother’s antenatal treatment during her pregnancy as well as perinatal records.
This lawsuit arises out of several defendants’ treatment of Joseph for focal seizures and for an anterior encephalocele (a "bulging eye”). It is alleged by plaintiff that the defendants failed to properly diagnose and treat the encephalocele in a timely manner which resulted in serious neurological injuries.
Joseph is of oriental decent. "Anterior encephalocele is more common in Southeast Asia than elsewhere” (Rapport and Dunn, Anterior Encephalocele, J of Neurosurgery 54:213-219 [Feb. 1981]). Defendants argue the infant’s "birth records” are sought to determine whether Joseph exhibited any neurological symptoms immediately after birth. Defendant further argues examination of the mother’s prenatal treatment is necessary to determine whether the encephalocele was hereditary.
Generally, disclosure of medical records as well as reports is required where a party’s physical condition is at issue (Hostler v Tonawanda Super Duper, 104 AD2d 720; CPLR 4504). Defendant also seeks medical records of a nonparty, the biological mother. It is her right to assert her physician-patient privilege (Hughson v St. Francis Hasp., 93 AD2d 491; see also, Williams v Roosevelt Hosp., 108 AD2d 9, affd 66 NY2d 391, and cases cited therein).' For obvious reasons, she has no notice of these proceedings. Furthermore, as the Court of Appeals held in Golan v Wise Servs. (69 NY2d 343, 346), "Access to confidential adoption information may be inimical to the interests of the adoptive parents, the biological parents and society. All have the strongest interest in the maintenance of anonymity. The adopted person may allege 'good cause’ for disclosure as opposed to mere curiosity (e.g., with affidavits 'which substantiate that medical and/or psychological necessity require the opening of an adoption record for the health and well-being of the petitioning adoptive child’ [Matter of Hayden, 106 Misc 2d *269 849, 852; see, Matter of Linda F. M., 52 NY2d 236, 240, appeal dismissed sub nom. Mason v Abrams, 454 US 806]), but the wishes and needs of the adopted person must be balanced against the needs of the other parties and society. The adoptive parents need to be shielded from interference with the adoptive relationship by biological parents. Biological parents also must be assured that their privacy will not be disturbed (Matter of Walker, 64 NY2d 354, 361; Matter of Linda F. M., 52 NY2d 236, 239, supra). Finally, society’s interest in providing children with substitute families through the adoption process (Matter of Linda F. M., supra, at 239; Matter of Anonymous’, 92 Misc 2d 224, 255), which may be damaged by disclosure, is of importance.”
As pointed out in Matter of Grand Jury Investigation of Onondaga County (59 NY2d 130, 136) the Court of Appeals ruled "exceptions to the statutorily enacted physician-patient privilege are for the Legislature to declare.” The court finds, as to the circumstances herein, section 373-a* of the Social Services Law provides such an exception. This statute protects the anonymity of the biological mother. Thus, notice to her of this application is not required (cf., Golan v Wise Servs., supra [where the identify of the biological parent was sought and the court held such notice was warranted]).
The court finds authority under CPLR 3120, 4504 and Domestic Relations Law § 114 to grant this application as to the adoptive child’s records.
*270 The application is granted as to the records of the biological mother to the extent that all matter identifying the biological mother shall be redacted. These records shall be forwarded to the court for in camera inspection to be made available to the attorneys for both sides.

 "§ 373-a. Medical histories
"Notwithstanding any other provision of law to the contrary, to the extent they are available, the medical histories of a child legally freed for adoption and of his or her natural parents, with information identifying such natural parents eliminated, shall be provided by an authorized agency to such child’s prospective adoptive parent and upon request to the adoptive parent when such child has been adopted and further, to the extent they are available, the medical histories of a child in foster care and of his or her natural parents shall be provided by an authorized agency to such child when discharged to his or her own care. Such medical histories shall include all available information setting forth conditions or diseases believed to be hereditary, any drugs or medication taken during pregnancy by the child’s natural mother and any other information, including any psychological information in the case of a child legally freed for adoption or when such child has been adopted, which may be a factor influencing the child’s present or future health. The department shall promulgate and may alter or amend regulations governing the release of medical histories pursuant to this section.”