OPINION OF THE COURT
Edward W. McCarty III, S.
This is an application by an adult who was born on March 2, *967 1953 and adopted on June 2, 1955, for access to her adoption records. The record reflects that in 1998 non-identifying information from petitioner’s adoption records was furnished to her through the New York State Department of Health Adoption Information Registry. Petitioner now seeks to unseal her adoption file in order to ascertain whether her birth mother was of the Jewish faith, as that would be determinative of petitioner’s religion under Jewish law. For the reasons set forth below, the court denies the application to unseal the records, but advises the petitioner that her biological mother listed her religion as Protestant (Lutheran).
In New York State, the sealing of adoption records has been mandated for more than 60 years, although courts had the discretionary power to seal these records even before then (Matter of Linda F. M., 52 NY2d 236, 239 [1981], appeal dismissed 454 US 806 [1981]). Currently, adoption records are sealed pursuant to Domestic Relations Law § 114, to protect and ensure confidentiality which is “vital to the adoption process” (Matter of Hayden, 106 Misc 2d 849, 850 [Sup Ct, Albany County 1981]). As expressed by the Court of Appeals, the purpose is to provide anonymity to the natural parents, enable the adoptive parents to form a close bond with their adopted child, protect the adopted child from possibly disturbing information that might be found in his records, and allow the state to foster an orderly and supervised adoption system (Matter of Linda F.M., 52 NY2d 236, 239 [1981]). There have been challenges to the power of New York State to seal adoption records, but the courts have determined that these statutes are not in violation of the Equal Protection Clause of the 14th Amendment and are constitutional (Matter of Linda F. M., 52 NY2d 236 [1981]; Matter of Romano, 109 Misc 2d 99 [Sur Ct, Kings County 1981]). Petitioner is correct in noting that legislation is pending which would impact upon these statutes and policies; however, currently they remain in place.
At the same time, the courts and the legislature have recognized that circumstances may exist in which it is vital that an adopted child be provided with information regarding his background (Matter of Peter B., 12 Misc 3d 1184[A], 2006 NY Slip Op 51404[U] [Sur Ct, Nassau County 2006]). When serious health issues arise, an adopted child or his adoptive parents may seek the medical history of the child’s biological family pursuant to Domestic Relations Law § 114 (4). This statute permits interested parties seeking medical information to estab *968 lish a prima facie case of good cause (see e.g. Matter of Peter B., 12 Misc 3d 1184[A], 2006 NY Slip Op 51404[U] [2006]). It is also possible to petition the court for access to adoption records for other reasons pursuant to Domestic Relations Law § 114 (2). This subdivision provides that adoption records may be unsealed upon a showing of “good cause.” It further directs that there must be “due notice to the adoptive parents and to such additional persons as the court may direct.” While it is unusual for adoption records to be unsealed for a nonmedical reason, “[e]xceptions to the medical requirement are rare but do occur occasionally” (Matter of Lewis, NYLJ, Apr. 20, 2007 at 32, col 1 [Sur Ct, Kings County]). The courts and the legislature have attempted to strike a balance between the state’s interest in maintaining sealed adoption records and the sometimes conflicting interests of all parties to an adoption, as further weighed against the justification underlying each particular request to unseal the records (Audra Behné, Balancing the Adoption Triangle: the State, the Adoptive Parents and the Birth Parents— Where Does the Adoptee Fit in?, 15 Buff J Pub Int L 49, 72 [1996-1997]).
In weighing the opposing interests, courts may deny an adoptee’s request to unseal her adoption record for lack of good cause. In a 2006 decision, the court denied an adoptee’s application where it determined that the request was based upon an “adoptee’s general curiosity about her ancestry and background” (Matter of Adoption of M.F., NYLJ, Sept. 9, 2006 at 46, col 5 [Sur Ct, Kings County]). Similarly, access to records was denied where petitioner wanted to give his children and grandchildren the opportunity to find out about their father’s heritage (Matter of Lewis, NYLJ, Apr. 20, 2007 at 32, col 1 [Sur Ct, Kings County]). “By its very nature, good cause admits of no universal, black-letter definition” (Matter of Linda F. M., 52 NY2d 236, 240 [1981]).
In cases in which good cause is found to exist, the court may require further steps to protect the parties to the adoption other than petitioner. In an application before this court, petitioner sought to unseal his adoption records for medical reasons, but failed to meet the specific statutory requirements of Domestic Relations Law § 114 (4) to establish good cause. The court advised petitioner that if he established good cause pursuant to Domestic Relations Law § 114 (2), he would also be required to furnish the court with consents signed by each of his adoptive parents, if they were living, or a death certificate for each *969 deceased adoptive parent (Matter of Peter B., 12 Misc 3d 1184[A], 2006 NY Slip Op 51404[U] [2006]). In Matter of Wilson, the Court found that petitioner, whose adoptive father was deceased and whose adoptive mother approved his petition, had established good cause to unseal his adoption records, but the Court still required a hearing to protect the interests of the biological parents, who may have wished to remain anonymous (Matter of Wilson, 153 AD2d 748 [2d Dept 1989]).
“Whether [good cause] exists, and the extent of disclosure that is appropriate, must remain for the courts to decide on the facts of each case” (Matter of Linda F. M., 52 NY2d 236, 240 [1981]). In a case decided by this court in 2009, the court granted the application of an adult adoptee who sought copies of his original pre-adoption birth certificate in order to establish his Hungarian lineage so that he could become a citizen of Hungary. Petitioner’s application was supported by the affidavit of his biological mother; his biological father was unknown and his adoptive parents were deceased. In that case, petitioner averred specific substantive benefits he would gain from Hungarian citizenship, and submitted a previously obtained copy of his original order of adoption (Matter of Victor M.I.I., 23 Misc 3d 1103[A], 2009 NY Slip Op 50557[U] [Sur Ct, Nassau County 2009]). Under those notably unique circumstances, the court directed that petitioner be provided with the copies of his original birth certificate; petitioner was not granted access to inspect the court adoption file.
In contrast, a court more recently denied the application of an adopted adult to unseal his adoption records to establish Puerto Rican roots so that he could participate in a basketball draft in Puerto Rico (Matter of the Adoption of a Child C. C., NYLJ, Jan. 7, 2010 at 40, col 4 [Sur Ct, Kings County]). The court found that petitioner failed to meet the due notice requirement of Domestic Relations Law § 114 (2) and farther failed to establish that his underlying reason for seeking to unseal the court records constituted good cause pursuant to Domestic Relations Law § 114 (2) {id.).
The court has been presented with the petition of an adult applicant who expresses a heartfelt and sincere desire to know the religion of her biological mother, but provides no other reason for unsealing the records. The court finds that the facts presented to the court today do not contain sufficient information on which the court might order the unsealing of petitioner’s adoption records on the basis of good cause or dispense with the due notice requirement of Domestic Relations Law § 114 (2).
*970 At the same time, the information sought by the petitioner is specifically included under the definition of non-identifying information which may be provided to petitioner (see Public Health Law § 4138-c [3] [e]). According to the adoption records on file with the court, the religious affiliation of petitioner’s birth mother was not Jewish, but was Protestant (Lutheran).
If petitioner still wishes to unseal her adoption file, she may resubmit her application to comply with Domestic Relations Law § 114 (2). If a further application is filed, the adopted child shall furnish the court with death certificates for her adoptive parents. In addition, the adopted child should agree, in writing, to pay the reasonable fees and expenses of a guardian ad litem who will be appointed by this court to review her adoption records and possibly locate and contact petitioner’s biological mother, if necessary, to obtain additional information.